UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States,

    Plaintiff,

v.                                      Case No. 18-20323

D-14 Christopher Staton,         Sean F. Cox
                                              United States District Court Judge

    Defendant.
_____/

## ORDER GRANTING THE GOVERNMENT'S MOTION IN LIMINE TO ADMIT DEFENDANT'S STATEMENTS

Before Defendant Christopher Staton was indicted, he entered into a proffer agreement with the Government. This agreement required Staton to provide "truthful and complete" information about a drug conspiracy that it believed he had aided. As long as he did, the Government agreed to not offer any of his proffer statements in its case-in-chief if it decided to prosecute him.

At his proffer session, Staton—a police officer—denied performing a traffic stop at the direction of a drug trafficker. The Government investigated further and, believing this denial to be a lie, scheduled a polygraph examination for Staton. Before the test, however, Staton admitted that he had lied and that he did, in fact, perform a traffic stop for the drug trafficker.

The Government decided to prosecute Staton. A grand jury indicted Staton on a drug conspiracy charge and for lying to federal officers. Trial will begin on September 10, 2019.

The Government has filed the only motion *in limine* in this case. In its motion, the Government argues that it may introduce Staton's proffered statements in its case-in-chief because Staton materially breached the proffer agreement by lying about the traffic stop and omitting other

1

details about his participation in the conspiracy. (ECF No. 264). Staton responded. (ECF No. 271). The Court heard testimony from FBI Special Agent Michael Fitzgerald and arguments on this issue on September 9, 2019.

For the reasons below, the Court will grant the Government's motion to the extent it rules that the Government is not bound by the proffer agreement.

## BACKGROUND[1]

In June 2017, the Government began wiretapping the phone of Meltwaine Dukes, a drug trafficker. This wiretap revealed that Dukes was concerned that one of his runners was lying to him about having a drug shipment seized by the police during a traffic stop. Dukes believed that the runner had actually stolen the shipment and fabricated the traffic-stop story as a cover up. So he called Staton, an old friend who was an officer with the Detroit Police Department. With federal agents listening, Dukes and Staton discussed the details of the alleged traffic stop, and Staton agreed to look into whether the stop and seizure had actually occurred.

The Government then wiretapped Staton's phone. This wiretap revealed more communications between Dukes and Staton, including a text exchange where Dukes sent a license plate number and Staton provided the owner's name and address.

Eventually, the Government confronted Staton with the evidence it had collected. In July 2018, Staton agreed to meet with the Government for a proffer. Before making any statements, Staton (and his attorney) signed a proffer agreement.

The agreement outlined the purpose of the proffer:

---

[1] This factual background is largely based on Special Agent Fitzgerald's testimony and the Government's brief. Staton does not appear to dispute this factual background.

2

> [The Government's] purposes in participating in a proffer session include: (a) to receive truthful information from [Staton], including information about possible criminal activity by [Staton] and others; and (b) to evaluate [Statons's] credibility as a source of information and potential witness. In return, this office will consider [Staton's] proffer statements in deciding how to resolve this investigation as it relates to [Staton] and any charges pending against [Staton] being prosecuted by this office.

(ECF No. 264-2, PageID 1094).

The agreement required Staton to tell the whole truth:

> [Staton] agrees that any information provided by [him] will be truthful and complete. This means, for example, that [Staton] may not provide false facts or omit facts about crimes, other participants, or his [] knowledge or involvement in offenses, and must volunteer all information that is reasonably related to these subjects. [Staton] must be completely truthful about the facts, whatever those may be.

(ECF No. 264-2, PageID 1095)

The agreement also required Staton to submit to a polygraph examination, if requested by federal prosecutors. *Id*. Staton agreed that his failure to tell the whole truth or to submit to a polygraph "constitute[d] a breach of this agreement." (ECF No. 264-2, PageID 1096).

In exchange for Staton's full and truthful testimony, the Government agreed that it would "not offer any proffer statement made by [Staton] in [its] case-in-chief in any criminal prosecution of [Staton]."(ECF No. 264-2, PageID 1095). But the agreement provided that, if Staton "fail[ed] to provide truthful and complete information on any matter discussed by [him] during a proffer session, there are no restrictions on [the Government's] use of [Staton's] proffer statements or information provided by [Staton]." (ECF No. 264-2, PageID 1096).

On July 12, 2018, Staton and his attorney met with the Government for the proffer session. Staton stated that he and Dukes had grown up together, and had reconnected after Dukes was released from prison and Staton had become a police officer. Staton admitted to dealing some drugs with Dukes and to assisting Dukes in other ways, such as running license plate numbers and scaring

3

other drug dealers away from Dukes's club.

During the proffer, Staton mentioned that he and Dukes had discussed conducting a traffic stop of an individual and fabricating police paperwork to make it appear as if one of Dukes's associates had been the target of an investigation. Staton denied performing a traffic stop at Dukes's direction or providing Dukes with fabricated police paperwork.

After Staton's proffer session, the Government continued investigating Dukes's drug trafficking organization and began to doubt the truthfulness of Staton's statements. On April 5, 2019, Staton again met with the Government, and again denied conducting a traffic stop for Dukes. The Government then informed Staton that it would require him to sit for a polygraph. Staton balked at the prospect of undergoing the lie-detector test and instead agreed to a second proffer session, which was conducted on April 12, 2019.

At the second proffer session, Staton acknowledged that he had not told the truth at his previous proffer and stated that he was "done lying." He admitted that he had, in fact, conducted a fake traffic stop at the direction of Dukes. Sometime around 2013, Staton and a friend stopped and "arrested" one of Dukes's associates (who was in on the plan), in an attempt to fool a different Dukes associate. Staton provided all the details of the stop, and stated that Dukes had paid him $20,000 to perform it.

On October 25, 2018, a grand jury indicted Staton on one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of false statement to a federal agent, in violation of 18 U.S.C. § 1001(a)(2).[2] Trial is set for September 10,

---

[2] A superseding indictment against Staton was filed on September 4, 2019. (ECF No. 274). This indictment removed Staton's co-defendants and added an additional count of false statement to a federal agent, which stems from the July 12, 2018 proffer session. The September

2019.

On July 26, 2019, the Government filed a motion *in limine*, seeking a ruling that Staton's proffer statements are admissible in the Government's case-in-chief because Staton materially breached the terms of the agreement by lying about the traffic stop and omitting other details of the support he provided Dukes. (ECF No. 264). Staton responded, arguing that, at the time of the proffer, he did not know how the traffic stop might have assisted Dukes. He also argues that he was "not privy as to what information the Government may have considered material" so he should not be held accountable for anything the Government describes as a "material omission." (ECF No. 271, PageID 1126). On September 9, 2019, the Court held an evidentiary hearing on this motion. FBI Special Agent Fitzgerald (the agent who conducted Staton's proffer sessions) testified at the September 9, 2019 hearing.

**ANALYSIS**

As other courts in this district have recognized, the Sixth Circuit set forth the standards surrounding alleged breaches of proffer agreements in *United States v. Fitch*, 964 F.2d 571 (6th Cir. 1992). *See United States v. Walker*, 2014 WL 1154346 at *3 (E.D. Mich. 2014); *United States v. Beasley*, 2014 WL 2095357 at * (E.D. Mich. 2014).

In *Fitch*, the Sixth Circuit recognized that "[t]o secure a defendant's cooperation in a criminal investigation, the government may informally grant him immunity in exchange for his testimony." *Fitch*, 964 F.2d at 574. Because these types of agreements are "contractual in nature, and subject to contract law standards," "[t]he conditions which will constitute a breach of the immunity agreement are governed by the agreement itself." *Id.* (citations omitted). The Government

---

4, 2019 indictment is the operative indictment that will be tried in this case.

bears the burden to prove that Staton breached the agreement, and that the breach was "material and substantial." *United States v. Darwich*, 574 Fed.App'x 582, 592 (6th Cir. 2014). "Although an inadvertent omission or oversight would not rise to the level of a materially false statement so as to constitute a breach of the agreement, a bad faith, intentional, substantial omission ... does constitute a materially false statement and thereby a breach of an agreement." *Id*. (quoting *Fitch*, 964 F.2d at 574).

Here, Staton does not dispute that he did not tell the Government about the traffic stop during the first proffer session. Instead, he argues that "there is no evidence that [he] knew how [performing a traffic stop] may have assisted" Dukes. (ECF No. 271, PageID 1126). At the hearing, Staton also argued that the Government did not ask him about performing a traffic stop generally, but only about performing a traffic stop to seize drugs, which he did not do. These arguments miss the mark. Staton agreed to "not provide false facts or omit facts about crimes, other participants, or his [] knowledge or involvement in offenses," and to "volunteer all information that is reasonably related to these subjects." (ECF No. 264-4, PageID 1102). His obligation was not limited to information related to activities that he thought assisted Dukes. And, the Court credits Special Agent Fitzgerald's testimony that Staton was specifically asked about, and denied, performing any sort of traffic stop. Therefore, the Court finds that Staton did not provide "truthful and complete" testimony because he denied performing a traffic stop and omitted the traffic stop's details. In other words, he breached the proffer agreement.

Special Agent Fitzgerald also testified that his investigation discovered several LEIN checks that Staton performed for Dukes. Staton did not disclose these checks during his proffer sessions. The Court finds that Staton's failure to disclose the LEIN checks constitutes an independent breach

6

of the proffer agreement, especially given Staton's admission regarding running license plates for Dukes. The Government's questioning regarding the license plates should have alerted Staton that it would have considered the LEIN checks to be "reasonably related" their investigation.

Further, Staton's breaches were material and substantial. The Government's investigation into Dukes and his drug trafficking organization was broad, and information about the traffic stop and LEIN checks would have shed light on Staton's involvement with Dukes and the organization's operation and sophistication. The information withheld by Staton would have aided the Government's investigation. Instead, the Government received nothing of value. Further, Staton sought to minimize his own wrongdoing through his misrepresentations and omissions. *See United States v. Reed*, 272 F.3d 950, 955 (7th Cir. 2001). And Staton's value as a potential witness in other cases was greatly reduced. For all these reasons, the proffer agreement was reduced to a "useless piece of paper that served only one party," *id*., and the Government did not receive "the benefit of its bargain." *Darwich*, 574 Fed.App'x at 594. Accordingly, the Government need not abide by the proffer agreement.

## CONCLUSION

The Court finds that the Government has satisfied its burden to show that Staton materially and substantially breached the terms of the proffer agreement. Therefore, the Court **GRANTS** the Government's motion to the extent it **RULES** that the Government is not bound by the proffer agreement.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 10, 2019